# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 5557 | **DATE** | 6/4/2012 |
| **CASE TITLE** | Holman vs. Record | | |

**DOCKET ENTRY TEXT**

For the reasons set forth below, Plaintiff's motions in limine [31] are granted in part and denied as moot in part, consistent with the discussion set forth below.

■ [ For further details see text below.]  Docketing to mail notices.

## STATEMENT

**1. Bar Defendant from inquiring about nature and extent of Plaintiff's relationship with Shawn Belton**

Plaintiff's motion is granted subject to the explanation set forth below on the scope of permissible testimony concerning Defendant's pre-arrest knowledge of Belton and his alleged activities.

From the parties' pre-trial filings, the Court understands the following: Shawn Belton was engaged in criminal activities, including fraud, identify theft, and/or forgery. Belton was among the targets of an investigation being led by Defendant Chicago Police Officer Edward Record. That investigation brought Officer Record, other Chicago Police Officers, and U.S. Postal Inspectors to the building in which Plaintiff Kenneth Holman resided on the date of his arrest. Belton is not a party to this lawsuit, nor is he listed on either party's witness list. It is undisputed that, at the time of the incident giving rise to this lawsuit, Defendant Record had no knowledge of any relationship between Plaintiff Holman and Mr. Belton. It also is undisputed that Plaintiff was released without being charged because there was not enough evidence linking him to fraud, forgery, identify theft (or any other crime).

A fundamental issue in this case is whether Defendant had probable cause to arrest Plaintiff. The law is clear that the jury must assess whether there was probable cause to arrest from an objective standard based solely on what an officer knew at the time of arrest. See, *e.g. Reynolds v. Jamison,* 488 F.3d 756, 765 (7th Cir. 2007) ("The fact that an officer later discovers additional evidence unknown to her at the time of the arrest is irrelevant – we only care about what the officer knew at the time the decision was made."). Plaintiff's motion seeks to preclude Defendant from inquiring about the nature and extent of any relationship between Plaintiff and Mr. Belton on the grounds that (1) information of that nature is irrelevant to the issues at trial

and (2) any probative value of such information would be heavily outweighed by the undue prejudice to Plaintiff.

Given Defendant's admission that he had no knowledge of any relationship between Plaintiff and Shawn Belton at the time of Plaintiff's arrest, any questioning of Plaintiff concerning the nature and extent of his relationship with Belton would run afoul of the line drawn in *Reynolds*. Any post-arrest information that Defendant or his attorneys may have acquired pertaining to a pre-arrest relationship between Plaintiff and Belton simply is not relevant to the issue of probable cause.

With that said, Defendant may testify or offer evidence of what he knew about Shawn Belton prior to Plaintiff's arrest to explain the presence Chicago police officers and U.S. Postal Inspectors at Plaintiff's residence based upon that pre-arrest knowledge. Defendant does not need to question Plaintiff about his relationship with Shawn Belton to explain that law enforcement was conducting an undercover operation that led them to the building containing Plaintiff's apartment.

The Court is not persuaded that Defendant's assertion that Plaintiff "named Detective Record as a defendant in this lawsuit because that was the name Shawn Belton gave him" alters the foregoing analysis. The identity and presence of Detective Record is not in dispute in this case. Furthermore, any post-arrest communications between Plaintiff and Shawn Belton, regardless of what was discussed, are irrelevant to the issue of whether there was probable cause to arrest Plaintiff at the time of arrest.

Nor is the Court persuaded that Defendant should be able to inquire into the Holman/Belton relationship based on any statements that Holman allegedly made regarding Mary Robinson. To be sure, Defendant may question Plaintiff about any statements that he made about Ms. Robinson and may in fact suggest that those statements were false if there is a factual basis for the suggestion based on the testimony elicited at trial. However, based on the Court's understanding of the case as set forth in the briefing on the motions in limine, the absence of any evidence linking Plaintiff to any crimes committed by Belton forecloses Defendant from taking the further step of suggesting that Plaintiff was motivated to lie about Ms. Robinson to aid Mr. Belton's criminal activity. See *United States v. Beck,* 625 F.3d 410, 418 (7th Cir. 2010) ("No attorney may ask a question if he does not have a good faith basis to ask it …"). If counsel for Defendant believes that there is a good faith basis for such inquiry based on information not yet made known to the Court, counsel must raise the issue at the earliest possible time and outside the presence of the jury to permit adequate time for argument and consideration of the issue.

In sum, because it appears that any information that Defendant has obtained concerning a friendship or relationship between Plaintiff and Belton was acquired after Plaintiff's arrest – and thus is irrelevant to the issue of probable cause – Defendant will not be permitted to question Plaintiff on the nature and extent of his relationship with Belton. See Fed. R. Evid. 401. Moreover, to allow this line of questioning would permit defendant to improperly suggest to the jury that Plaintiff was somehow associated with or responsible for crimes committed by Belton (and/or his co-conspirators) without any factual basis for making such a suggestion. See Fed. R. Evid. 403.

   2.      **Bar Defendant from asking questions or introducing evidence regarding whether Plaintiff has ever been disciplined by an employer or terminated from employment**

In view of Defendant's representation that he no longer intends to offer such evidence, Plaintiff's motion is denied as moot. However, if Plaintiff opens the door, the Court may allow Defendant to impeach Plaintiff with this line of questioning. If this becomes an issue during trial, the Court will address the issue outside the

| STATEMENT |
|---|

presence of the jury. Plaintiff's current employment and employment at the time in question may be discussed as background, but Defendant may not inquire into discipline or termination from employment unless Plaintiff opens the door.

> **3. Bar Defendant from offering argument that an adverse verdict will cause Defendant emotional distress, embarrassment, or will lead to punishment**

Plaintiff's motion is granted in part and subject to the following caveats.

Defendant argues that since Plaintiff is seeking punitive damages, the fact that there would be a punitive element to such a verdict is obvious. One thing that would be obvious by the request for punitive damages is the possibility of an award of damages against Defendant. Defendant may argue that an award of punitive damages would pose a financial hardship on him. But if he does, he will be opening the door to exploration on cross-examination of his personal financial situation, as well as to any indemnification obligation that Defendant's employer may have in regard to compensatory damages. See, *e.g.*, *Delgado v. Mak*, 2008 WL 4367458, at *4-*5 (N.D. Ill. Mar. 31, 2008) (citing cases). Similarly, if Defendant wishes to present evidence that an adverse verdict would cause emotional distress or embarrassment, he may make arguments based upon that evidence and subject to cross-examination. However, if no such evidence is introduced at trial, counsel may not argue emotional distress or embarrassment to appeal to the sympathy of jurors. *United States ex rel. Shaw v. DeRobertis,* 755 F.2d 1279, 1281 (7th Cir. 1985) (arguments of counsel must be based upon evidence admitted at trial).

Plaintiff also seeks to bar Defendant from suggesting that he could be disciplined or otherwise punished by the Chicago Police Department or that an adverse verdict would pose a risk to his career. In response, Defendant argues "the fact that Defendant could have been punished by his employer for the alleged misconduct makes it more probable that he would not have committed it." As Defendant points out, this line of argument has been deemed improper. See, *e.g.*, *United States v. Swiatek,* 819 F.2d 721, 731 (7th Cir. 1987) (improper to argue that police officer would be risking career if he lied); *United States v. McMath,* 559, F.3d 657, 668 (7th Cir. 2009) (it was improper to say that the officers would lose their jobs if they lied); *United States v. Johnson-Dix,* 54 F.3d 1295, 1304-05 (7th Cir. 1995) (improper to assert that law enforcement agent would risk his job if he lied). Defendant did not respond to these cases. Furthermore, any argument that engaging in misconduct would be risking punishment would have to be based on evidence that such a risk actually exists. Any such argument would open the door to evidence from Plaintiff attempting to show that there is little risk that a Chicago Police Officer actually would be punished for engaging in misconduct. Thus, even if this line of argument were not improper under the case law, it would lead to an impermissible side-trial that would confuse the issues and possibly overwhelm the central underlying dispute. See Fed. R. Evid. 403.

*[signature]*